UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **ROY LEONARD BURRIS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:20-cv-00041 |
| | § | |
| **TRACTOR SUPPLY COMPANY,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant Tractor Supply Company moves to compel arbitration in this work-injury tort case. (Dkt. No. 20). In the underlying dispute, Plaintiff Roy Leonard Burris alleges Tractor Supply's negligence caused him to suffer a severe back injury. Tractor Supply asserts that the Parties entered a binding and mandatory arbitration agreement that applies here. Burris contends there was never a "meeting of the minds" regarding the arbitration provision. Upon review, the Court finds that the Parties entered a binding arbitration agreement which applies to the dispute at hand. Tractor Supply's Motion is therefore **GRANTED** and this case is **DISMISSED WITHOUT PREJUDICE**.

I.  **BACKGROUND**

The underlying dispute in this case arises from a classic work-injury. Burris alleges he suffered a severe back injury while engaged in his normal duties within the course and scope of his employment for Tractor Supply. (Dkt. No. 1 at 2). Specifically, he alleges he injured his back while he and a co-worker were moving a 152-pound gate to a customer's vehicle. (*Id.*) He claims Tractor Supply should have supplied him with a lift-assistance tool or assigned additional personnel to safely complete the task that caused him injury, and that Tractor Supply's failure to

do so was negligent. (*Id.* at 2–3). Tractor Supply counters in part that Burris's injuries were preexisting or caused by Burris himself or third parties. (Dkt. No. 5 at 1–2).

But Tractor Supply contends this dispute over causation is of no moment because the Parties are bound by a mandatory arbitration provision that strips this Court of jurisdiction. (*Id.* at 1) (Dkt. No. 20 at 1–2). Tractor Supply explains that a mandatory arbitration provision is contained within a restatement (the "Restatement") of an occupational injury benefit plan, referred to as the TSCares Texas Work Injury Program (the "Plan"), which Tractor Supply had in place prior to Burris's injury.[1] (Dkt. No. 20 at 1). In full, the arbitration provision in the Restatement provides:

> You are also hereby notified that, on and after 8/15/17 disputes relating to the cause of an on-the-job injury that cannot otherwise be resolved between you and Tractor Supply will be subject to arbitration -- a process where both you and Tractor Supply have an impartial, outside person from the American Arbitration Association make a final decision that is legally binding . . . . This is a mandatory company policy that is effective upon the date of this notice.

(Dkt. No. 20-2 at 2).

Tractor Supply argues that the arbitration provision contained within the Restatement is binding on Burris. Specifically, Tractor Supply points out that he "acknowledged" the provision during a computer training module. (Dkt. No. 20 at 3–6). Tractor Supply explains that Burris accessed a digital version of the Restatement through Tractor Supply's internal software and clicked a button labelled "Agree" on a page listing the arbitration provision. (*Id.* at 4). The "Agree" button referenced by Tractor Supply provided as follows:

> Please acknowledge that you have carefully read and agree to the material contained in this document by clicking the "Agree" button

---

[1] Tractor Supply promulgated the Plan and the Restatement pursuant to the Employee Retirement Income Security Act ("ERISA"). (Dkt. No. 20 at 1).

below. *Please note that this will constitute your e-signature*, which
is the electronic equivalent of a hand-written signature.

(Dkt. No. 20-3 at 2) (emphasis added). Below this message were two buttons for users to click, labelled "Agree" and "Disagree," respectively. (*Id.*). Tractor Supply's internal records indicate Burris clicked "Agree" on September 2, 2017. (Dkt. No. 20-5 at 3) (Dkt. No. 20-1 at 3–4). As explained in detail below, Burris does not seriously dispute this allegation. And Tractor Supply further explains that, upon acknowledgment of the Restatement's arbitration provision, Burris was informed that he had continuing access to a summary version of the Plan (the "Summary Plan") on Tractor Supply's intranet which reiterated the mandatory arbitration requirement.[2] (Dkt. No. 20-1 at 3).

Tractor Supply filed its Motion on March 12, 2021. (Dkt. No. 20). Burris timely responded, (Dkt. No. 21), and Tractor Supply replied accordingly, (Dkt. No. 23). The Motion is now ripe for this Court's review.

## II. DISCUSSION

Tractor Supply invokes the Federal Arbitration Act (FAA) to compel arbitration of Burris's negligence claim.[3] (Dkt. No. 20 at 1). The Supreme Court has made clear that the FAA "declare[s]

---

[2] The relevant version of the Summary Plan was promulgated in 2010. (Dkt. No. 20-7 at 2). Burris was hired in 2015. (Dkt. No. 21-5 at 5). The Summary Plan provided, in relevant part, that "claims of negligence" that "cannot otherwise be resolved between the Employer and you are subject to final and binding arbitration." (Dkt. No. 20-7 at 4). Furthermore, the Summary Plan stated that arbitration is "the only method for resolving any such claim or dispute." (*Id.*). Although Tractor Supply appears to imply that Burris is a "non-signator[y]" of the Summary Plan, it points to language within the Summary Plan stating that its arbitration requirement "applies to all team members without regard to whether they have completed and signed a Receipt, Safety Pledge and Arbitration Requirement form or similar written receipt." (Dkt. No. 20 at 5–6) (Dkt. No. 20-7 at 6). Burris maintains that he "did not clearly sign" the Summary Plan, but he concedes that he "acknowledged receiving" it. (Dkt. No. 21 at 6).

[3] In relevant part, the Federal Arbitration Act provides:

A written provision in any . . . contract evidencing a transaction involving
commerce to settle by arbitration a controversy thereafter arising out of such contract
or transaction, or the refusal to perform the whole or any part thereof, or an agreement

(continue)

3

a national policy favoring arbitration of claims that parties contract to settle in that manner." *Preston v. Ferrer*, 552 U.S. 346, 353, 128 S.Ct. 978, 983, 169 L.Ed.2d 917 (2008) (alteration in original) (internal quotation and citation omitted). The Fifth Circuit prescribes "two analytical steps" in determining whether to enforce an arbitration agreement. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016); *see also Polyflow, LLC v. Specialty RTP, LLC*, --- F.3d ----, 2021 WL 1184456, *3 (5th Cir. 2021) (describing the "two considerations" to determine whether the parties agreed to arbitrate a dispute).[4] "The first is contract formation—whether the parties entered into *any arbitration agreement at all*." *Kubala*, 830 F.3d at 201 (emphasis in original). "The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Id.* (emphasis in original). Based on the following, the Court finds in the affirmative for both steps.

### A. THE PARTIES ENTERED INTO AN ARBITRATION AGREEMENT

Whether the Parties entered into a valid arbitration agreement turns on state contract law. *Id.* at 202. The Parties agree and the Court finds that Texas contract principles apply. *See* (Dkt. No. 21 at 4–5; Dkt. No. 23 at 1–2). A party seeking to prove contract formation must prove, among other things, "acceptance and a meeting of the minds on all essential elements." *Principal Life Ins. Co. v. Revalen Dev., LLC*, 358 S.W.3d 451, 454–55 (Tex. App. – Dallas 2012, pet denied); *see also David J. Sacks, PC v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) ("A meeting of the minds

---

in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

[4] The Fifth Circuit in *Polyflow* additionally required inquiry into "whether any federal statute or policy renders the claims nonarbitrable." --- F.3d ----, 2021 WL 1184456, at *3. Burris does not allege any such federal statute or policy, and the Court finds none to preclude application of the Restatement's arbitration clause here.

4

is necessary to form a binding contract."). Here, the Parties dispute whether there was acceptance and a meeting of the minds on the arbitration provision's essential elements.

1. **<u>Acceptance</u>**

Burris first challenges whether he accepted the Restatement's arbitration provision. Namely, he asserts that the evidence is unclear whether he "even signed" the Restatement. (Dkt. No. 21 at 6). For further support, he avers that there is a fact dispute over whether the button he clicked to approve of the Restatement was labelled "Agree" or "Submit." (*Id.* at 3) (comparing Dkt. No. 20-3 with Dkt. No. 21-2). On the other side, Tractor Supply points to an internal log purporting to demonstrate that Burris clicked "Agree" when presented with the Restatement's arbitration provision. (Dkt. No. 20-5 at 3) (Dkt. No. 20-3 at 2) (Dkt. No. 20-1 at 3–4).

The Court finds that Burris accepted the Restatement's arbitration provision. The document Burris references as displaying the word "Submit" pertained to the Summary Plan, not the Restatement itself. *See* (Dkt. No. 21-2 at 5). Even if—at another time—Burris clicked the "Submit" button after reviewing the Summary Plan, Burris does not dispute the accuracy of Tractor Supply's internal log purporting to demonstrate he clicked "Agree" upon reviewing the Restatement. Accordingly, the undisputed facts demonstrate that Burris clicked "Agree" when presented with the Restatement.

Next, Burris's contention that he did not "even sign" the Restatement is meritless. As an initial matter, the Restatement's "Agree" button made clear that clicking "Agree" would "constitute [Burris's] e-signature." (Dkt. No. 20-3 at 2). Beyond this, Burris has not argued that such an electronic signature is somehow invalid. Indeed, under Texas law, he could not. *See* TEX. BUS. & COM. CODE § 322.007(a) ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form."). The Court therefore finds that Burris demonstrated acceptance of the Restatement's arbitration provision.

### 2.  Meeting of the Minds

Burris next challenges whether there was a meeting of the minds as to *what* he accepted. Although somewhat imprecise, his argument boils down to an attempt at exploiting a minor discrepancy between the language of the arbitration clause used in the Restatement and that used in the Summary Plan. (Dkt. No. 21 at 6). Specifically, he argues that the Restatement's clause requiring arbitration for "claims or disputes relating to the *cause* of an on-the-job injury" is narrower than the Summary Plan's clause requiring arbitration for, as relevant here, "claims of negligence" in connection with an on-the-job injury. (*Id.* at 2, 6); *see also* (Dkt. No. 21-3 at 39) (Dkt. No. 20-7 at 33). Burris would have this Court find that this difference matters because, as he puts it, "conflicting details in arbitration provisions suggest there is no meeting of the minds with respect to arbitration." (Dkt. No. 21 at 6) (citations omitted).

Burris is correct as a general matter of law regarding the effect of "conflicting details in arbitration provisions," but to no avail here. The reason Burris does not benefit from this principle is demonstrated amply in the two cases he cites to support his meeting-of-the-minds argument. Burris first cites to *O'Shaugnessy v. Young Living Essential Oils, L.C.*, in which the panel found no meeting of the minds where an arbitration clause "directly conflict[ed]" and "[could not] be harmonized" with jurisdiction-selection and-choice-of-law clauses. 810 F. App'x 308, 312 (5th Cir. 2020). Burris also cites to *Moran v. Ceiling Fans Direct, Inc.*, in which the panel found no meeting of the minds where, among other things, a company president "circulated a memo addressing the arbitration policy that *directly contradicted* its terms." 239 F. App'x 931, 937 (5th Cir. 2007) (emphasis added); *see also Bellman v. i3Carbon, L.L.C.*, 563 F. App'x 608, 610 (10th Cir. 2014) (finding no meeting of the minds where, among other things, one agreement contained an arbitration clause and another agreement contained a forum selection provision); *Summit Contractors, Inc. v. Legacy Corner, L.L.C.*, 147 F. App'x 798, 801–802 (10th Cir. 2005) (same).

The principles of *O'Shaugnessy* and *Moran* do not apply to the case at hand. Unlike the competing documents in those cases, Tractor Supply's arbitration clause in the Restatement does not conflict with or contradict its arbitration clause in the Summary Plan—much less "directly" so. Any "claim for negligence" brought by an employee will necessarily include a claim "relating to the cause" of that same claim. *See, e.g.*, *AEP Tex. Cent. Co. v. Arredondo*, 612 S.W.3d 289, 293 (Tex. 2020) ("The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages *proximately caused* by the breach.") (quotation omitted). That is, the Restatement's mandated arbitration of all claims relating to the *cause* of an on-the-job injury can be perfectly "harmonized" with the Summary Plan's mandated arbitration of all *claims of negligence* in connection with an on-the-job injury. *Cf. O'Shaughnessy*, 810 F. App'x at 312. By stark contrast, the arbitration and jurisdiction-selection/choice-of-law clauses in *O'Shaughnessy* could not logically co-exist. *Id.* Thus, Burris's meeting-of-the-minds argument is meritless. The Court therefore finds that Burris and Tractor Supply had a meeting of the minds as it pertains to the Restatement's arbitration provision. That provision is binding on Burris.

B. **THIS DISPUTE FALLS WITHIN THE SCOPE OF THE RESTATEMENT'S ARBITRATION PROVISION**

Next, the Court must determine whether Burris's negligence claim against Tractor Supply falls within the scope of the Restatement's arbitration provision. *See Kubala*, 830 F.3d at 201. Like the Court's inquiry into contract formation, the scope of the Restatement's arbitration provision initially turns on principles of state contract law.[5] *See Volt Info. Sci., Inc. v. Bd. of Tr.*

---

[5] But unlike the contract formation inquiry, courts must also give "due regard . . . to the federal policy favoring arbitration" such that "ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sci., Inc. v. Bd. of Tr. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989); *see also Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236–37 (5th Cir. 2013) (noting that the scope inquiry requires courts to apply "federal policy and

(continue)

*Of Leland Stanford Junior Univ.*, 489 U.S. 468, 474, 109 S.Ct. 1248, 1253, 103 L.Ed.2d 488 (1989) (noting in the FAA context that "the interpretation of private contracts is ordinarily a question of state law"). Here, Texas law applies. *See Graves v. BP America, Inc.*, 568 F.3d 221, 223 (5th Cir. 2009) (analyzing whether plaintiff's "state cause of action" fell within the relevant arbitration provision by assessing "the nature of the suit [as] defined by Texas law").

Again, the Restatement requires arbitration of all "claims or disputes relating to the cause of an on-the-job injury." (Dkt. No. 20-2 at 2). Burris alleges that the injury at issue here occurred on the job. (Dkt. No. 1 at 2). And, as mentioned above, Burris's negligence claim under Texas law inevitably requires determination of "the cause" of Burris's injury. *See Arredondo*, 612 S.W.3d at 293. Accordingly, Burris's negligence claim falls within the scope of the Restatement's arbitration provision.

Arguing to the contrary, Burris argues that his claim "is not a dispute related to the *cause* of an on-the-job injury" because "the cause of Plaintiff's injuries is not seriously disputed . . . ." By so arguing, Burris confuses the general applicability of the arbitration provision to a specific type of claim with a defendant's answer to that claim during litigation. That is, even if *any* element of the relevant cause of action is "not seriously disputed" once a lawsuit is commenced, that fact does not nullify the binding effect of an arbitration provision precluding the suit as a preliminary matter. But even if the Court were to entertain Burris's argument, it would fail here: as described above, Tractor Supply raises multiple challenges to the *cause* of Burris's injury in its Answer. (Dkt. No. 5 at 1–2). Thus, Burris's sole argument related to the scope of the arbitration clause falls short as a conceptual matter *and* when taken at face value.

---

resolve ambiguities in favor of arbitration"). This federal policy requires no further discussion in the present case, however, because Burris's state law negligence claim unambiguously falls under the Restatement's arbitration provision.

8

## III. CONCLUSION

For the foregoing reasons, the Court finds that the Parties entered a binding arbitration agreement which applies to the dispute at hand.[6] The Court therefore **GRANTS** Tractor Supply's Motion to Compel Arbitration. (Dkt. No. 20). This action is **DISMISSED WITHOUT PREJUDICE**.

It is SO ORDERED.

Signed on May 28, 2021.

*[signature: Drew B. Tipton]*

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

---

[6] Tractor Supply alternatively asserts that Burris should be equitably estopped from avoiding the arbitration provision contained in the Restatement because Burris directly benefited from the Plan when he previously relied on it to cover medical expenses from a workplace injury unrelated to the incident in the instant action. (Dkt. No. 20 at 6–8) (citing, *inter alia*, *Wash. Mut. Fin. Grp, LLC v. Bailey*, 364 F.3d 260, 267–68 (5th Cir. 2004), and *Noble Drilling Servs. v. Certex USA, Inc.*, 620 F.3d 469, 473–74 (5th Cir. 2010)). The Restatement was promulgated on August 15, 2017, and Tractor Supply covered Burris's emergency room costs under the Plan for a hand injury he suffered on August 18, 2017. (Dkt. No. 20-1 at 3) (Dkt. No. 20 at 8) (Dkt. No. 20-9 at 2) (Dkt. No. 20-10 at 3). Yet Burris avers that equitable estoppel should not apply here because Burris has received no benefit from the Plan for his instant back injury, and also because, he alleges, Tractor Supply has "unclean hands." (Dkt. No. 21 at 7–12). Because the Court finds that Burris and Tractor Supply entered a binding arbitration agreement, the Court need not address Tractor Supply's equitable estoppel argument.